UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN BERRY,                                      )
                 Plaintiff,                     )
                                 )    No. 1:12-cv-319
-v-                                              )
                                 )    HONORABLE PAUL L. MALONEY
WYOMING HOUSING COMMISSION and                   )
REBECA VENEMA, in her official capacity           )
as Executive Director of the Wyoming             )
Housing Commission,                              )
                 Defendants.                   )
_____)

**ORDER GRANTING PLAINTIFF'S MOTION TO SUPPLEMENT**
**and**
**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Dawn Berry ("Plaintiff") filed a motion for a temporary restraining order and preliminary injunction. (ECF. No. 4). The motion for a temporary injunction was denied, and a hearing was scheduled for her motion for a preliminary injunction. Plaintiff filed a motion to supplement her motion for a preliminary injunction. (ECF No. 12.) The hearing occurred on May 30, 2012. The Court afforded the parties one week to file supplemental briefs, which they have done. (ECF Nos. 22 and 23.)

I.

Plaintiff's motion to supplement (ECF No. 12) her motion for preliminary injunction is **GRANTED.** Plaintiff states that, under W.D. Mich. L. R. Civ. P. 7.1(b), she contacted Defendant Wyoming Housing Commission ("WHC") prior to filing the motion, and that WHC had no objection to the filing of the supplemental brief.

II.

A district court has discretion to grant or deny preliminary injunctions. *Warshak v. U.S.*, 490

F.3d 455, 465 (6th Cir. 2007).  When deciding a motion for a preliminary injunction, a court should consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief. *Babler v. Futhey*, 618 F.3d 514, 519-20 (6th Cir. 2010) (citing *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)).  The four factors are not prerequisites that must be established at the outset, but are interconnected considerations that must be balanced together.  *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006).

III.

Plaintiff has been participating in the Housing Choice Voucher program since 2008.  On December 20, 2011, WHC informed Plaintiff, by letter, that it intended to terminate her voucher on January 19, 2012, for failing to fulfill her obligations under the program.  (ECF. No. 1-1 December Notice PgID 16.)  The violations identified in the letter included Plaintiff's failure to pay rent, Plaintiff's violations of a pet policy and "trash/ damages." (*Id.*)  The letter also indicated there was damage to the unit or premise other than from ordinary wear and tear, which was another violation of the program.  (*Id.*)  Plaintiff requested and received a hearing, which occurred on January 12, 2012.  (ECF. No. 5-1 Pl. Ex. 1 Affidavit ¶¶ 5 and 8.)  On January 16, 2012, the Commission issued a letter stating that it would proceed with the termination of Plaintiff's assistance.  (ECF. No. 5-4 Pl. Ex. 4 January Letter PgID 114.)  In this letter, WHC explained that Plaintiff's voucher was not being terminated on the basis of the pending eviction, but because Plaintiff had violated her lease agreement.  (*Id.*)

Plaintiff requested a formal hearing on January 25, 2012, which occurred on February 15, 2012.  (ECF No. 13-1 Hrg. Tr.)  Naesha Leys, a formal hearing officer, presided over the formal hearing.  Plaintiff was represented at the hearing by an attorney.  Plaintiff, Tim Lakin (the housing inspector), Rachel Osbon (WHC and individual who wrote the initial December 20 letter), and Christine Roelofs (WHC and individual who presided over the initial hearing), all presented statements at the formal hearing.  In addition, approximately fifteen exhibits were considered at the formal hearing, including the notice of inspection and reinspection of Plaintiff's unit, the list of lease violations prepared by the landlord, the list of damages and photographs prepared by the landlord, a copy of the past due water bill, and the inspection form prepared on December 12, 2011.  (ECF No. 6-1 Pl. Ex. 6 Formal Hrg. Summary PgID 119-20.)

Based on WHC's representations, Leys noted that the termination proceedings began, not because of the pending eviction of Plaintiff, but because of various lease violations that were discovered at the annual inspection of the rental unit.  (*Id.* PgID 120).  The annual inspection occurred on December 12, 2011.  The inspector found that the unit was in violation of a number of obligations of the housing program and the problems had to be corrected within thirty days.  (*Id.* PgID 120.)  Leys found that the inspection report did not identify whether Plaintiff or the landlord was responsible for making the corrections.[1]  (*Id.*)  When the inspector returned to the unit, Plaintiff did not allow the inspector to access the unit.  (*Id.*)  Leys found that the problems had been fixed, but not within the thirty-day deadline.  (*Id.*)

Separate from the problems discovered during the inspection, Plaintiff was accused of other

---

[1]At the formal hearing, Plaintiff disputed her responsibility for the alleged damages to the unit.  No determination of responsibility for those damages has been made.

violations of the housing program. Leys found that Plaintiff was not paying for trash service, and was storing garbage in the garage. (*Id.*) Leys found that Plaintiff was not paying for trash service and had stored garbage in her garage for some time after Plaintiff lost her job. (*Id.* PgID 120-21.) Leys also found that Plaintiff also had not paid her water bill and was behind on her rent. (*Id.* PgID 121.) Leys concluded that the relevant regulation pertaining to serious and repeated violations of lease obligations did not require mandatory termination from housing program. (*Id.*)

Leys held that Plaintiff did violate her obligations under the program, but noted that the violations found in the unit's inspection had been rectified. (*Id.* PgID 122.) Leys noted that the corrections were not done within the thirty-day deadline. (*Id.*) Leys recommended that Plaintiff not be terminated from the program. (*Id.*) Leys did recommend that the portion of the voucher for utilities be terminated as Plaintiff was collecting the money, but not paying for trash and was behind on her water bill. (*Id.*)

On March 6, 2012, WHC issued its final decision. (ECF No. 6-2 Pl. Ex. 7 Final Decision PgID 124.) WHC rejected Ley's recommendations. (*Id.*) WHC concluded that it did not have the authority to terminate only a portion of the voucher. (*Id.*) WHC also concluded that the documented violations provided valid reasons for terminating Plaintiff's assistance. (*Id.*) WHC stated that, at the hearing, the parties agreed upon four specific violations of Plaintiff's obligations: (1) failure to pay water and trash bills, (2) failure to maintain the rental premises, (3) failure to correct the deficiencies within 30 days, and (4) housekeeping habits that caused damage to the unit by keeping months of trash piled in a garage. (*Id.*)

IV.

Plaintiff requests this Court issue a preliminary injunction restoring her Housing Choice

Voucher pending the resolution of the merits of her complaint. Plaintiff reasons that WHC violated her due process rights when WHC ignored Ley's decision to allow Plaintiff to remain in the housing program. Plaintiff contends if Ley's decision to cut the portion of Plaintiff's voucher that was supposed to pay for utilities was not consistent with the relevant regulations and statutes, then the matter should be remanded to Ley's. Plaintiff insists she should not be punished by losing her housing voucher because of Ley's error.

A. Likelihood of Success on the Merits

Plaintiff argues the Commission cannot ignore the decision of a hearing officer simply because it disagrees with the officer's findings. Plaintiff argues that the Commission's decision to ignore the recommendations of the hearing officer constitutes a violation of her rights to due process.

Plaintiff has not established a likelihood of success on the merits. At least one circuit has held that the likelihood of success on the merits is the *sine qua non* of injunctive relief. *See Wine and Spirit Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 46 (1st Cir. 2005). The Sixth Circuit Court of Appeals has held that it was not error to dispense with the analysis of the other three factors where the moving party's evidence on the first factor was sufficiently weak. *See Leary v. Daeschner*, 2289 F.3d 729, 739 n.3 (6th Cir. 2000). WHC's decision to terminate Plaintiff's participation in the housing program is supported legally and by the facts in the record.

Contrary to Plaintiff's assertions, WHC was not bound to follow the hearing officer's recommendations. Under 24 C.F.R. § 982.555(f)(2), a public housing authority is not bound by a hearing decision when that decision is "contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law." Plaintiff concedes that the housing voucher cannot be

divided by subtracting utilities from the voucher. (ECF. No. 5 Pl. Br. 9.)  A reasonable person could read Ley's decision and fairly conclude that the recommendation to allow Plaintiff to continue to participate in the program hinged on WHC being able to subdivide the voucher and withhold part of the assistance.

Taking the evidence in the light most favorable to Plaintiff, two of the four reasons for terminating Plaintiff's assistance identified in WHC"s final determination were based on factual determinations by the hearing officer.  Plaintiff failed to pay her water bill one month, and failed to pay her trash bill for several months.  Plaintiff was also behind on her rent payments.  The other two reasons identified by the WHC for terminating Plaintiff's participation have a factual basis in the record.  Although the deficiencies identified in the annual inspection were corrected, they were not corrected within thirty days.  No determination was ever made about which party, Plaintiff or the landlord, was responsible for those corrections.  Plaintiff did generally contest whether she was responsible for many of the items identified in the annual inspection.  Plaintiff did not contest that she let garbage accumulate in her garage for several months.

Plaintiff has not established a likelihood that she was denied due process.  Plaintiff was afforded all the protections required under *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970).  *See Rios v. Town of Huntington Hous. Auth.*, – F. Supp. 2d –, 2012 WL 118594, at * 10 - * 11 (E.D.N.Y. Apr. 10, 2012).  Plaintiff was given notice of the WHC's intention to terminate her assistance. Plaintiff was informed of the reasons for the termination.  Plaintiff was represented by counsel and was afforded an opportunity to present evidence at a hearing.  Plaintiff's claim that WHC's rejection of the hearing officer's recommendation rendered the hearing illusory is not persuasive.  *See id.*, at * 12. The regulation put Plaintiff on notice that, under certain conditions, WHC was not bound by

the hearing officer's recommendation. Plaintiff admits that the hearing officer recommended a course of action that was not authorized by law. The hearing officer correctly concluded that Plaintiff's termination from the program was not required, but was discretionary.[2] Because Plaintiff failed to meet her obligations as a participate in the housing program, by not paying the utilities and the rent, WCH had the authority to terminate Plaintiff from the program.

Plaintiff has not identified any legal authority to support her conclusion that some additional process is required when a public housing authority, not bound by a hearing officer's recommendation under § 982.555(f), decides to terminate a recipient's benefits. Plaintiff identified what additional process she should be afforded. "*[S]omething more*" (Pl. Supp. Br. 5) is not required by law or statute.

### B. The Other Three Factors

As noted in the order denying Plaintiff's motion for a temporary restraining order[3], the remaining three factors do not substantially tilt the balance of considerations in favor of granting a temporary restraining order. *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399-400 (6th Cir. 1997). Certainly, Plaintiff will suffer harm if she is terminated from the program.

---

[2]The hearing officer cited 24 § 982.552(b)(2). That regulation requires from the program when a family is evicted from a housing program for serious violations of the lease. However, under § 982.552(c)(1)(i), a public housing authority may terminate assistance for violation of family obligations under § 982.551. Section 982.551(c) states that the family is responsible for "an HSQ breach caused by the family as described in § 982.404(b)." Section 982.404(b) identified family obligations including, in subsection (b)(1)(i), a breach of obligations caused by the family's "failure to pay for any utilities that the owner is not required to pay for, but which are to be paid by the tenant."

[3]Plaintiff does not address the other three factors in her supplemental brief. The arguments raised in Plaintiff's motion for a temporary restraining order on the other three factors have already been addressed.

The "irreparable harm" factor weighs in Plaintiff's favor.  WHC will suffer if it is forced to continue

to provide assistance to Plaintiff.  WHC determined that Plaintiff did not meet her obligations under

the program.  In addition, assuming funds are finite, if WHC is forced to provide assistance to

Plaintiff, some other eligible person will not be provided assistance.  The "harm to others" factor

weighs against Plaintiff.  Finally, the public interest factor favors neither party.  The public certainly

has an interest in minimizing homelessness.  The public also has an interest in having individuals

on public housing assistance fulfill their obligations under the terms of the program.

V.

For the reasons outlined here, Plaintiff's motion for a preliminary injunction (Dkt. No. 4 and

12) is **DENIED.  IT IS SO ORDERED.**


Date:    June 11, 2012                                    /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      Chief United States District Judge